IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| KATIE D. MCCLARAN; ASHLEY THOMAS; JENNIFER L. ROACH; and JENNIFER L. SHARPE, on behalf of themselves and all other similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>CAROLINA ALE HOUSE OPERATING COMPANY, LLC; LM RESTAURANTS, INC.; and SULLIVAN MANAGEMENT LLC,<br><br>        Defendants. | C.A. No.: 3:14-cv-03884-MBS |

**MEMORANDUM OF LAW IN SUPPORT OF
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT, CERTIFICATION OF RULE 23 SETTLEMENT CLASS,
CERTIFICATION OF FLSA SECTION 216(b) COLLECTION ACTION
SETTLEMENT CLASS, AND NOTICE OF PROPOSED SETTLEMENT
TO CLASS MEMBERS AND CLASS ACTION SETTLEMENT PROCEDURE**

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

    A.   The Parties .................................................................................................. 2

    B.   History of the Litigation ............................................................................. 2

    C.   Investigations, Informal Discovery, and Settlement Negotiations ............ 3

    D.   Second Amended Complaint ....................................................................... 4

II.   THE SETTLEMENT TERMS ........................................................................... 5

    A.   The Settlement Fund and Claims Administrator Payment from Defendants ......... 5

        1.   $1,167,500 Paid in Cash ................................................................. 5

        2.   $750,000 Paid in Credit by Promotional Cards ............................. 5

        3.   $1,000,000 in Value Represented by Tip-Pool Policy Changes ............ 6

        4.   Settlement Claims Administrator Payment of $12,500 .................. 6

    B.   Release ........................................................................................................ 6

    C.   Eligible Employees ..................................................................................... 7

    D.   Allocation Formula ..................................................................................... 7

    E.   Attorneys' Fees and Costs .......................................................................... 9

    F.   Incentive Payments .................................................................................. 10

    G.   Settlement Claims Administration ........................................................... 10

III.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ................ 11

    A.   Legal Standards for Preliminary Approval ............................................. 11

    B.   The Substantial Benefits for the Settlement Classes, Weighed Against Litigation Risks, Strongly Supports Preliminary Approval ............. 13

    C.   The Settlement Is the Result of Arm's-Length Negotiations by Well-Informed and Experienced Counsel, and Plaintiffs Support the Settlement ............. 16

IV.   THE RULE 23 SETTLEMENT CLASS  SHOULD BE CERTIFIED FOR SETTLMENT PURPOSES ................................................................. 17

    A.   Numerosity ............................................................................................... 18

    B.   Commonality ............................................................................................ 19

    C.   Typicality ................................................................................................. 20

    D.   Adequacy of the Named Plaintiffs .......................................................... 21

    E.   Certification is Proper Under Rule 23(b)(3) ........................................... 21

        1.   Common Questions of Law and Fact Predominate ...................... 22

        2.   A Class Action Is a Superior Mechanism ................................... 22

V.   THE FLSA SECTION 216(b) COLLECTIVE ACTION SETTLMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ................. 24

VI.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL ............. 26

**VII.**   THE PROPOSED NOTICE TO THE SETTLEMENT CLASSES SHOULD BE
       APPROVED................................................................................................26

**VIII.**  PROPOSED SCHEDULE ............................................................................28

**IX.**   CONCLUSION..............................................................................................29

# TABLE OF AUTHORITIES

## Cases

*Armstrong v. Board of School Directors of City of Milwaukee*,
   616 F.2d 305 (7th Cir. 1980) ............................................................................... 11

*Beaulieu v. EQ Industrial Services, Inc.*,
   No. 5:06-CV-00400BR, 2009 WL 2208131 (E.D.N.C. July 22, 2009) ............................ 26, 27

*Brown v. Eckerd Drugs, Inc.*,
   663 F.2d 1268 (4th Cir. 1981), *vacated on other grounds*, 457 U.S. 1128 (1982) .................. 18

*Brunson v. Louisiana-Pacific Corporation*,
   818 F. Supp. 2d 922 (D.S.C. 2011) ........................................................................ 15

*Butler v. DirectSat USA, LLC*,
   800 F. Supp. 2d 662 (D. Md. 2011) ....................................................................... 24

*Central Wesleyan College v. W.R. Grace & Co.*,
   143 F.R.D. 628 (D.S.C. 1992), *aff'd*, 6 F.3d 177 (4th Cir. 1993) .............................. 18

*Chisolm v. TranSouth Financial Corporation*,
   184 F.R.D. 556 (E.D. Va. 1999) ........................................................................... 21

*Chisolm v. TranSouth Financial Corporation*,
   194 F.R.D. 538 (E.D. Va. 2000) ........................................................................... 18

*deMunecas v. Bold Food, LLC*,
   No. 09 Civ. 00440(DAB), 2010 WL 2399345 (S.D.N.Y. Apr. 19, 2010) ........................... 19

*Duprey v. Scotts Company LLC*,
   30 F. Supp. 3d 404 (D. Md. 2014) ........................................................................ 11

*Ervin v. OS Restaurant Services, Inc.*,
   632 F.3d 971 (7th Cir. 2011) ............................................................................... 24

*Falcon v. General Telephone Company of the Southwest*,
   626 F.2d 369 (5th Cir. 1980), *vacated on other grounds*, 450 U.S. 1036 (1981) ............... 20

*Frank v. Eastman Kodak Company*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ......................................................................... 22

*Ganesh, L.L.C. v. Computer Learning Centers, Inc.*,
   183 F.R.D. 487 (E.D. Va. 1998) ................................................................. 18, 19, 21

*General Telephone Company of the Southwest v. Falcon*,
   457 U.S. 147 (1982) ......................................................................................... 19

*Grunin v. International House of Pancakes*,
   513 F.2d 114 (8th Cir.1975) ........................................................................... 26, 27

*Gunnells v. Healthplan Services, Inc.*,
   348 F.3d 417 (4th Cir. 2003) ......................................................................... 17, 21

*Haywood v. Barnes*,
   109 F.R.D. 568 (E.D.N.C. 1986) ........................................................................ 20

*Holsey v. Amour & Company*,
   743 F.2d 199 (4th Cir. 1984) .................................................................................. 18

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   855 F. Supp. 825 (E.D.N.C. 1994) .................................................................. 10, 11

*In re General Motors Corporation Pick-up Truck Fuel Tank Products Liability Litigation*,
   55 F.3d 768 (3d Cir. 1995) ...................................................................................... 17

*In re Southeast Hotel Properties Limited Partnership Investor Litigation*,
   151 F.R.D. 597 (W.D.N.C. 1993) ...................................................................... 19, 21

*In re Visa Check/MasterMoney Antitrust Litigation*,
   280 F.3d 124 (2d Cir. 2001) .................................................................................... 22

*Lomascolo v. Parsons Brinkerhoff, Inc.*,
   No. 1:08cv1310 (AJT/JFA), 2009 WL 3094955 (E.D. Va. Sept. 28, 2009) ............ 11

*Lynn's Food Stores, Inc. v. U.S. By and Through U.S. Department of Labor, Employment Standards Administration, Wage and Hour Division*,
   679 F.2d 1350 (11th Cir. 1982) .............................................................................. 24

*Mills v. Roanoke Industries Loan & Thrift*,
   70 F.R.D. 448 (W.D. Va. 1975) .............................................................................. 22

*Phillips Petroleum Company v. Shutts*,
   472 U.S. 797 (1985) ................................................................................................ 22

*Rawls v. Augustine Home Health Care, Inc.*,
   244 F.R.D. 298 (D. Md. 2007) ............................................................................... 23

*Reyes v. Autamarea Group, LLC*,
   No. 10 Civ 6451 (RLE), 2011 WL 4599773 (S.D.N.Y. June 3, 2011) .................... 18

*Rodger v. Electronic Data Systems Corporation*,
   160 F.R.D. 532 (E.D.N.C. 1995) ........................................................................... 17

*Simpson v. Specialty Retail Concepts*,
   149 F.R.D. 94 (M.D.N.C. 1993) ............................................................................. 19

*South Carolina National Bank v. Stone*,
   139 F.R.D. 325 (D.S.C. 1991) ................................................................................ 20

*Thiessen v. General Electric Capital Corporation*,
   996 F. Supp. 1071 (D. Kan. 1998) .......................................................................... 23

## Statutes

29 U.S.C. § 201 *et seq.* ................................................................................................. 1

## Other Authorities

3 ALBA CONTE & HERBERT B. NEWBERG &, NEWBERG ON CLASS ACTIONS (3d ed. 1992)
   § 11.41 .................................................................................................................... 15

4 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.27 (4th ed. 2002) ............................................................................................................ 16

7AA CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1778 (3d ed. 2005) ............................................................................................................ 20

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.14 ........................................ 10

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 ...................................... 11

**Rules**

Fed. R. Civ. P. 23(a) .............................................................................................. 17

Fed. R. Civ. P. 23(a)(1) ......................................................................................... 17

Fed. R. Civ. P. 23(a)(3) ......................................................................................... 19

Fed. R. Civ. P. 23(b)(3) ............................................................................. 17, 20, 21

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................... 25

Fed. R. Civ. P. 23(e)(1) .......................................................................................... 25

Fed. R. Civ. P. 23(g)(1) .......................................................................................... 24

Fed. R. Civ. P. 23(g)(1)(A) ..................................................................................... 25

Fed. R. Civ. P. 23(h) ................................................................................................ 9

Fed. R. Civ. P. 54(d)(2) ........................................................................................... 9

## I.    INTRODUCTION

Plaintiffs Katie D. McClaran ("McClaran"), Ashley Thomas ("Thomas"), Jennifer L. Roach ("Roach"), and Jennifer L. Sharpe ("Sharpe") individually and on behalf of all others similarly situated, by their undersigned attorneys hereby submit their Motion for Preliminary Approval of Settlement, Certification of the Rule 23 Settlement Class[1] and the FLSA[2] Section 216(b) Collective Action Settlement Class (collectively, the "Settlement Classes"), and Notice of Proposed Settlement to Class Members pursuant to Fed. R. Civ. P. 23(e) and FLSA Section 216(b).  Subject to Court approval, Plaintiffs – tipped service workers at restaurants owned, operated or managed by Carolina Ale House Operating Company, LLC ("CAHOC"), LM Restaurants, Inc. ("LM Restaurants"), and/or Sullivan Management LLC ("Sullivan Management" and collectively with CAHOC and LM Restaurants "Carolina Ale House Entities" or "Defendants") – have settled this class and collective action for cash, credit, and policy changes worth an estimated $2,930,000.  The proposed settlement resolves Plaintiffs' claims on a class-wide basis and satisfies the criteria for preliminary settlement approval.

In accordance with Fed. R. Civ. P. 23(a) and (b) and FLSA Section 216(b), Plaintiffs seek certification of both a class and collective action for purposes of effectuating this settlement, and pursuant to Rule 23(e) and Section 216(b), respectively, Plaintiffs seek Court approval of the settlement as described below, together with proposed notice to the Plaintiff Settlement Class of the terms thereof.  Specifically, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement; certify the Settlement Classes and appoint Plaintiffs as class representatives and Plaintiffs' counsel as class counsel, for purposes of the Settlement;

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated _____, 2015 (the "Settlement Agreement"), attached as Exhibit 1 to Plaintiffs' Motion for Preliminary Approval of Settlement.

[2] "FLSA" refers to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.*

approve the form and manner of providing notice of the Settlement to the Settlement Classes; and enter the accompanying proposed Preliminary Approval Order.

### A.    The Parties

Plaintiffs allege that Defendants are the corporate owners and/or operators of Carolina Ale House restaurants as defined in the Settlement Agreement, which consists of the restaurants in operation during the Covered Period located in South Carolina, North Carolina, Georgia, Tennessee, and Texas (collectively, "Carolina Ale Restaurants"). Plaintiffs and proposed class representatives McClaran, Thomas, Roach, and Sharpe work or worked as tipped servers and bartenders for the Carolina Ale House Restaurants during the relevant time period. Specifically, Plaintiffs McClaran, Roach, and Sharpe are current employees, and Plaintiff Thomas is a former employee of the Carolina Ale House Restaurants.

### B.    History of the Litigation

On October 3, 2014, Plaintiffs McClaran, Thomas, and Roach commenced this action as a collective action under 29 U.S.C. § 201 *et seq.*, bringing claims under the Fair Labor Standards Act against CAHOC and LM Restaurants. Plaintiffs alleged that Defendants violated the FLSA by (1) paying less than the minimum wage to Plaintiffs and other similarly situated employees and then requiring them to pay a percentage of their tips to Defendants' other employees who are not employed in a job position that customarily and regularly receives tips; and (2) failing to provide adequate oral or written notice of the requirements for a valid tip pool as required by the FLSA.

Defendants CAHOC and LM Restaurants filed answers to the original complaint on November, 17, 2014, denying liability and asserting various affirmative defenses. On November 24, 2014, the Plaintiffs served interrogatories and requests for production on Defendants CAHOC and LM Restaurants. On December 8, 2014, Plaintiffs filed an Amended FLSA

Collective Action Complaint adding Sharpe as a named plaintiff and corporate entity Sullivan Management LLC as Defendant. Thereafter, Plaintiffs' counsel filed notices of joinder and consents to become party plaintiffs on behalf of eight individuals on December 12, 2014 and another eight individuals on January 6, 2015.

### C.    Investigations, Informal Discovery, and Settlement Negotiations

Prior to the deadline for filing a Federal Rule of Civil Procedure Rule 26(f) report, the parties could not agree on a proposed scheduling order. In an effort to avoid protracted litigation on a similar course, the parties agreed to extend the deadline for Defendants' discovery responses and to request an extension of the Rule 26(f) report deadline so that the parties could exchange information relevant to the claims and defenses at issue and attempt to resolve the litigation through a settlement conference ultimately set for January 13, 2015. Defendants produced substantial documents and other relevant information prior to the January 13, 2015 settlement conference. Additionally, early on in the litigation, Plaintiffs had begun engaging multiple private investigators to interview current and former employees of Carolina Ale House Entities and observe first-hand the employment practices at issue in this case, and Plaintiffs shared this information with Defendants.

On January 13, 2015, the parties attended a settlement conference with John Cuttino, an independent mediator with significant experience in employment matters, including wage-and-hour collective and class actions. During the settlement conference, the parties exchanged additional information supporting their respective positions on the relevant facts including video recordings and sworn declarations. Also during the settlement conference, Plaintiffs' counsel discussed filing a second amended class action complaint to assert state-law claims and their intention to promptly seek conditional collective action certification if a settlement could not be reached.

The January 13, 2015 settlement conference lasted until 9:00 p.m. and failed to result in a resolution; however, the parties agreed to continue negotiations.  Subsequent to the settlement conference's conclusion, the parties continued to exchange relevant information and engage in protracted arm's length negotiations as the parties requested and received multiple extensions of Court deadlines in the hopes that a settlement could be reached.  Finally, on or about 8:43 p.m. on Wednesday, February 11, 2015, the parties reached an agreement in principle to settle the litigation.

At all times, the parties' negotiations were non-collusive and at arm's length.  In the weeks after negotiating a settlement in principal and apprising the Court of the same, the parties drafted and negotiated the details of a proposed final settlement agreement that includes all terms.  Taking into consideration the expense and length of the proceedings that would be necessary to continue this lawsuit through trial and the uncertainty and risk of further litigation, Plaintiffs and Plaintiffs' Counsel have determined that the Settlement set forth in the Settlement Agreement is fair, adequate, and reasonable, and is in the best interest of the Settlement Classes.

### D.     Second Amended Complaint

As part of the Settlement Agreement, Defendants consented to Plaintiffs' filing their second Amended Class Action and FLSA Collective Action Complaint (the "Second Amended Complaint"), which Plaintiffs are filing by written consent of Defendants pursuant to Fed. R. Civ. P. 15(a)(2).  In the Second Amended Complaint, Plaintiffs allege additional facts and assert state-law claims on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23, which provides for opt-out class participation.  Like the original and first amended complaints, the Second Amended Complaint also asserts claims for alleged violations of the FLSA, the collective action provisions of which provide for opt-in class participation, pursuant

to 29 U.S.C. § 216(b).  The Settlement Agreement negotiated by the Parties contemplates a hybrid Rule 23 / FLSA Section 216(b) settlement notice and administration.

## II.    THE SETTLEMENT TERMS

### A.    The Settlement Fund and Claims Administrator Payment from Defendants

The total settlement consideration of the claims resolved by this Settlement Agreement is $2,930,000 inclusive of all payments and benefits to class members and attorneys' fees and costs, but not including the employers' share of payroll taxes.  Of this amount, the settlement value consists of $2,917,500 as set forth below.

### 1.    $1,167,500 Paid in Cash

In consideration of the settlement of the released Plaintiffs' claims against Defendants, the Carolina Ale House Entities will pay $1,167,500 in cash to a Settlement Cash Fund in three separate payments.  The first payment of $500,000 will be made into an escrow account maintained by the claims administrator by the later of (i) five business days after the date of entry by the Court of an order preliminarily approving this Settlement or (ii) July 1, 2015.  By the later of (i) five business days after preliminary approval of the settlement by the Court or (ii) December 31, 2015, the Defendants will pay $500,000 into the escrow account.  By the later of (i) five business days after preliminary approval by the Court or (ii) April 1, 2016, Defendants will pay the remaining $167,500 cash portion into the escrow account.

### 2.    $750,000 Paid in Credit by Promotional Cards

Defendants will issue Promotional Cards with an equal per capita share of $750,000 based on the number of class members.  The credit on the Promotional Cards will be redeemable for food and non-alcoholic beverages at Carolina Ale House Restaurants covered by this settlement.

### 3.    $1,000,000 in Value Represented by Tip-Pool Policy Changes

Pursuant to this settlement, the following changes to the tip-pool policies will be implemented and maintained at all Carolina Ale House Restaurants for a two-year period at all Carolina Ale House Restaurants covered by this settlement: (i) the percentage of gross sales to be contributed to the tip pool will reduced from 3% to 2.5%, and (ii) expediters will not be included as beneficiaries of the tip pool.  Defendants represent that, based on gross sales for the past fiscal year, the reduction in the percentage of gross sales from 3% to 2.5% for tip-pool contribution represents approximately $1,000,000 in value across covered Carolina Ale House Restaurants that will inure to the benefit of class members who are current employees.  Defendants further acknowledge that the commencement, prosecution, and settlement of the litigation was a material and substantial factor in the Defendants' decision to adopt, implement, and maintain these tip-pool policy changes.

### 4.    Settlement Claims Administrator Payment of $12,500

Additionally, the Carolina Ale House Entities will pay $12,500 for the costs of notice and settlement administration directly to the claims administrator.  Following preliminary approval by the Court, Defendants will pay the reasonable and actual notice and administration costs incurred, up to $12,500, directly to the claims administrator when due.  Other than the employers' share of payroll and other taxes described in the Settlement Agreement, Defendants will not be required to contribute more than $2,930,000.00 under its terms.

### B.    Release

The settlement agreement provides that every class member who does not timely opt out of the settlement will release Defendants from all wage and hour claims that were or that could have been asserted in the Second Amended Complaint.  Class members who redeem any portion of the credit on their Promotional Card (which shall will have printed in conspicuous writing

information including the following: "Recipient's redemption of any portion of this card constitutes recipient's consent to class and Fair Labor Standards Act collective action membership and release of all wage and hour claims approved by the court in *McClaran et al. v. Carolina Ale House Operating Company, LLC et. al.*, Civil Action No: 3:14-cv-03884-MBS (D.S.C.)") or who submit a Claim Form will be deemed also to have provided their consent to join the FLSA collective and to release the FLSA claims that were or could have been brought in the litigation.

### C.    Eligible Employees

The eligible employees consist of all individuals who worked more than forty (40) hours during the Covered Period – from October 3, 2012 until January 12, 2015 – and were paid less than the minimum wage by means of a "tip credit" (servers, bartenders, food runners, and expediters) at Carolina Ale House Restaurants (as defined in the Settlement Agreement, which consists of the restaurants in operation during the Covered Period located in South Carolina, North Carolina, Georgia, Tennessee, and Texas), in addition to any opt-in plaintiffs as of the execution date of the Settlement Agreement that were employed prior to the beginning of this period, except (obviously) those class members that opt out of the settlement. Additionally, tipped employees that worked more than 80 hours during the same Covered Period and who file claim forms approved by the claims administrator are also eligible for a *pro rata* share of the remaining Net Settlement Fund based on the number of hours worked over and above 80 hours.

### D.    Allocation Formula

Every class member that does not opt out of the settlement will be entitled to receive a Promotional Card with an equal *per capita* share of the $750,000 paid in credit at Carolina Ale House Entities via Promotional Cards (equal to $750,000 divided by the final number of class members as determined by the claims administrator).  As noted, tipped employees who worked

7

more than 80 hours during the Covered Period will also be entitled to receive a *pro rata* portion of the remaining Net Settlement Fund based upon the number of hours they worked over and above 80 hours.

The 40-hour threshold in the class definition and this section references the training period for all employees at Carolina Ale House Restaurants.  Per Defendants' representations, no tip credit was claimed during employees' training period, which lasted for the first 40 hours of employment, and additionally, tipped employees in training were not required to share the tips they received.  Accordingly, any Carolina Ale House Restaurant employee who worked less than 40 hours would not meet the criteria of a "tipped employee" of the proposed class definition.  To avoid any potential confusion as to the meaning of "tipped employee" and based on Defendants certification of the facts referenced in this paragraph, Plaintiffs are incorporating the 40-hour threshold in the class definition to determine eligible employees for the Settlement.

Additionally, the 80-hour eligibility threshold for payment from the Net Settlement Fund is based on the fact that those class members who worked for 80 hours or less in total – the first 40 hours of which would have been in training and the next 40 hours (or less) as tipped employees – will be fully compensated by the credit received on the Promotional Card.  Based on the current estimate of the number of class members (3,550) (which estimate will not change materially for purposed of this *per capita* calculation), each class member will receive approximately $211.26 in credit for use at Carolina Ale House Restaurants on a Promotional Card.  Accordingly, those employees who worked as tipped employees for 40 hours or less (80 hours or less in total) will receive at least the full value of the tip credit under the FLSA ($5.12) claimed for each hour they worked at a Carolina Ale House Restaurant.  Accordingly, eligibility

for an additional payment from the Net Settlement Fund is reserved for those Carolina Ale House Restaurant employees who worked beyond the 80-hour mark.

Employees who worked for more than 80 hours during the period October 3, 2012 to January 12, 2015 – that is, employees who worked for more than 40 hours as a tipped employee after completing the 40-hour training period as well – and who were paid less than the minimum wage by means of a "tip credit" (that is, servers, bartenders, food runners, and expediters) at Carolina Ale House Restaurants located in South Carolina, North Carolina, Georgia, Tennessee, or Texas are also entitled to a cash distribution from the Net Settlement Fund upon submitting a timely Claim Form that is approved by the Claims Administrator (the "Authorized Claimants" under the Settlement Agreement).

The Net Settlement Fund available for distribution to Authorized Claimants pursuant to the Settlement will be at least $500,000. Each Authorized Claimant will be entitled to a *pro rata* share of the Net Settlement Fund based on the hours he or she worked as a tipped employee over and above 80 hours during the period October 3, 2012 to January 12, 2015. The amount each Authorized Claimant receives will depend on the number of hours he or she worked as well as the number of hours worked by other Authorized Claimants. Based on the current estimates as to the number of hours worked over and above 80 hours by potential Authorized Claimants, the *pro rata* payment could range from as low as $0.22 per hour (if 100% of eligible claimants file acceptable Claim Forms) to as high as a median recovery of approximately $3.45 per hour (if 10% of eligible claimants with the median number of hours worked over 80 hours file acceptable Claim Forms).

### E.  Attorneys' Fees and Costs

Plaintiffs' counsel's application for an award of attorneys' fees and/or litigation expenses is not the subject of any agreement between Defendants and Plaintiffs' counsel other than what is

set forth in the Settlement Agreement.  Plaintiffs' counsel's request for attorneys' fees and costs will not exceed 22% of the Settlement Value and shall not exceed an amount that would reduce the Net Settlement Fund available for distribution to class members below $500,000. Defendants take no position on such application so long as Plaintiffs' counsel does not apply for fees and costs in excess of that amount.  The Court need not rule on fees and costs now; Plaintiffs' counsel will file a motion for approval of fees and costs along with their motion for final approval of the settlement.  *See* Fed. R. Civ. P. 23(h) & 54(d)(2).

### F.    Incentive Payments

In addition to their individual awards under the allocation formula, and subject to Court approval, Plaintiffs McClaran, Thomas, Roach, and Sharpe will seek $2,500 each in recognition of the services they rendered to the class ("Incentive Payments").  Their services included, but were not limited to, stepping forward and informing counsel of the facts initially and as the case progressed, subjecting themselves to potential retaliation for doing so, informing putative class members of the lawsuit, participating in litigation strategy, and reviewing and commenting on the terms of the settlement.  Plaintiffs will move for Court approval of the Incentive Payments simultaneously with their motion for final approval of the settlement.  Pursuant to the Settlement Agreement, Defendants have agreed not to contest such application.

### G.    Settlement Claims Administration

The claims administrator will be responsible for mailing out the Summary Notice to class members; mailing out Promotional Cards in accordance with the settlement terms; (unless handled by Plaintiffs' counsel) maintaining a website where relevant documents are posted, including the long-form notice and proof of claim form, the Second Amended Complaint, and once filed, the application for attorneys' fees and expenses and motion for final approval of settlement and supporting documents; following up on any undeliverable claim forms, including

making reasonable attempts to locate class members where the first notice is returned as undeliverable at the address provided; responding to class members' inquiries; collecting claim forms form class members; and calculating class members' settlement payments based on data provided by Carolina Ale House Entities and the claim forms submitted by class members. The claims administrator will also maintain an escrow account for the purposes of receiving funds from Defendants, issuing the checks to Plaintiffs, Plaintiffs' counsel, and class members. The claims administrator will also make any and all necessary tax deductions and perform all necessary tax reporting and tax paying obligations, with the exception of any and all applicable employer tax contributions associated with wage payments, which shall be paid by Defendants based on calculations from the claims administrator.

## III.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    Legal Standards for Preliminary Approval

Under Rule 23(e) of the Federal Rules of Civil Procedure, judicial review of a proposed class action settlement consists of a two-step process: preliminary approval and a subsequent settlement fairness hearing. MANUAL FOR COMPLEX LITIGATION (FOURTH) ("MCL") § 13.14 at 171. Given this two-step process, the Court is not required to undertake an in-depth consideration of the relevant factors for final approval at this stage of the proceedings. *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994). Instead, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." MCL § 21.632. As part of this first preliminary step, the Court determines "whether the proposed settlement is 'within the range of possible approval' or, in other words, whether there is 'probable cause' to notify the class of the

proposed settlement." *Horton*, 855 F. Supp. at 827 (quoting *Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 314 & n.13 (7th Cir. 1980)).

Although "the Fourth Circuit has not directly addressed the factors to consider in determining whether an [FLSA class settlement] . . . is fair and reasonable, various federal courts have analogized to the fairness factors generally considered for court approval of class action settlements" under Rule 23(e). *Lomascolo v. Parsons Brinkerhoff, Inc.*, No. 1:08cv1310 (AJT/JFA), 2009 WL 3094955, at *11 (E.D. Va. Sept. 28, 2009). Indeed, courts in such circumstances regularly employ a multi-step analysis similar to the two-step approach for preliminary approval of class action settlements. *See Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 408 (D. Md. 2014). As part of that approach, courts first determine whether there is a "*bona fide* dispute" over FLSA issues before "determining the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23." *Id.* Much like the first preliminary step of the Rule 23(e) process, "[i]n deciding whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement." *Id.*

The Settlement reached in this matter is easily 'within the range of possible approval' and clearly satisfies the 'probable cause' test for notifying the class of the proposed settlement under Rule 23(e) and, for the same reasons, likewise represents the resolution of a "*bona fide* dispute" of the FLSA. Indeed, the Settlement reached in this matter is a fair, reasonable, and adequate resolution of the state-law and FLSA claims asserted in this class and collective action for the reasons that follow.

**B.    The Substantial Benefits for the Settlement Classes, Weighed Against Litigation Risks, Strongly Supports Preliminary Approval**

The benefits achieved for the Settlement Classes through this Settlement are substantial, particularly in light of the significant obstacles to recovery under both the state-law and FLSA claims.  While Plaintiffs believe that the claims have substantial merit, they involve complicated issues, and Plaintiffs and the Settlement Classes faced significant risk in establishing liability.  For example, Defendants have maintained throughout the litigation that the expediter position is not a separate and distinct job position from the food runner position at Carolina Ale House Restaurants.  If proved at trial that the expediter job position was in truth a joint food runner/expediter position such that the food runner/expediter ordinarily and regularly interacted with customers, that fact would undermine Plaintiffs' state-law and FLSA claims.

In support of their contention that Plaintiffs' claims lacked merit, Defendants pointed to the fact that the expediters and food runners wear the same uniform, are trained in the same way, and are subject to the same training policies and procedures.  Also in support of these contentions, Defendants obtained declarations from 15 employees, including food runners/expediters, expediter corporate trainers, servers, and managers at the Carolina Ale House–Harbison location, where Plaintiffs McClaran, Thomas, and Roach are employed.  Each of these declarations stated that the expediters at issue also served as food runners and had customary and regular customer interaction, and all but one of the declarants were potential opt-in plaintiffs.  At mediation, Defendants also presented surveillance video to support their assertions that expediters ran food to customers and to demonstrate that they were trained to do so.

Countering these assertions, Plaintiffs presented the results of their investigations into the policies and practices at Carolina Ale House Restaurants across the southeast.  Plaintiffs retained

an investigative firm early on in the litigation to investigate the employment practices and expediter job responsibilities at Carolina Ale House Restaurants, and the results of that investigation showed that the policies and procedures with respect to tip sharing with expediters as well as the separate and distinct job responsibilities of that position validated Plaintiffs' claims. At mediation, Plaintiffs tendered to Defendants a declaration from the lead investigator to that effect as well as the declaration of a separate investigator who interviewed employees and made video recordings at different Carolina Ale House Restaurants. These recordings showed the expediters in action and supported Plaintiffs' contentions as to their utter lack of customer interaction. Additionally, Plaintiffs provided Defendants with a declaration from a former manager at the Carolina Ale House in Favetteville, North Carolina that supported Plaintiffs assertion of the facts in this regard, and Plaintiffs also pointed to the separate job descriptions and applications for food runners and expediters on LM Restaurants' corporate website.

In addition to these sharply divided positions on the merits, Defendants and Plaintiffs had starkly different ideas on the amount and recoverability of damages and the associated complexities of proof at trial. In this regard, Defendants asserted that Plaintiffs' estimation of damages were grossly inflated, even assuming liability, because the opt-in rates for FLSA collective actions average between 10 to 20 percent and because Defendants believed the opt-in rate for this case may be below 10 percent based on the limited number of opt-ins so far, particularly relative to the number of declarations Defendants secured from servers and bartenders disputing key allegations at issue. Moreover, Defendants argued that the appropriate examination of damages should proceed on a shift-by-shift basis based on the limited existing case law available, and because expediters were not employed on every shift, determining the potential damages could require multiple trials and result in a sum totaling a fraction of

14

Plaintiffs' estimation.  Additionally, Defendants asserted that different restaurants had different practices in this regard, which would add complexities to proof at trial.  Plaintiffs countered that there had been no notice or any other outreach effort to potential opt-in plaintiffs thus far and asserted Plaintiffs belief that the opt-in rates would be substantially higher than Defendants' estimations.  Plaintiffs also advocated that a workweek-by-workweek analysis would be more appropriate based on the Department of Labor's application of the FLSA.

Particularly in light of the complexity, length, and uncertainty presented by further litigation in this matter, the Settlement achieved represents a significant benefit to members of the Settlement Classes.  As discussed, all members of the Settlement Classes will be entitled to receive a Promotional Card with an amount of credit equal to a *per capita* share of $750,000 based on the number of Settlement Class Members.  Based on current figures received from the Defendants, the members of the Settlement Classes include 3,550 individuals, and accordingly, each will receive approximately $211 in credit on a Promotional Card via this Settlement.  Additionally, members of the Settlement Classes who worked more than 80 hours will also be eligible to receive a *pro rata* share of the Net Settlement Fund based on the number of hours worked over and above 80 hours.[3]  Finally, as discussed above, members of the Settlement Classes who are current employees of the Carolina Ale House Restaurants will also receive the benefit of policy changes to the tip-pool procedures, which will last for a minimum of two years.  Pursuant to these policy changes, the required tip-pool contribution of tipped employees at Carolina Ale House Restaurants will be reduced from 3% to 2.5%, and expediters will be prohibited from participating in the tip pool.  Defendants represent that the estimated value of

---

[3]  As noted, the 80-hour threshold was determined based on the fact that members of the Settlement Classes who worked for 80 hours or less will be compensated at a rate of at least $5.28 per hour for each hour worked as a tipped employee (that is, for each hour worked after their training period, which lasted for the first 40 hours of employment).

this policy change for the benefit of its tipped employees is $1 million based on the most recent fiscal-year sales data across the Carolina Ale House Restaurants.

Particularly in light of the risk, complexity, and potential duration of continued litigation, the Settlement Consideration – worth an estimated total of $2,930,000 with the inclusion of claims-administration expenses to be paid by Defendants – represents a substantial benefit to the Settlement Classes. Accordingly, the Settlement represents a fair, reasonable, and adequate resolution of state-law and FLSA claims that are a subject of *bona fide* dispute between the parties, and therefore, the Settlement Agreement should be preliminarily approved and notice sent to members of the Settlement Classes.

### C. The Settlement Is the Result of Arm's-Length Negotiations by Well-Informed and Experienced Counsel, and Plaintiffs Support the Settlement

In evaluating a proposed class action settlement, "'a presumption of fairness exists where: (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small.'" *Brunson v. Louisiana-Pac. Corp.*, 818 F. Supp. 2d 922, 927 (D.S.C. 2011) (quoting 3 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS (3d ed. 1992) § 11.41).

Here, the Settlement was achieved only after protracted arm's-length negotiations and a thorough investigation of the merits of Plaintiffs claims, feasibility of their proof, and the likely availability of damages. Mot. for Prelim. Approval of Settlement (Apr. 3, 2015), Ex. 1, at 2-3 ("Settlement Agreement"); Declaration of James Mixon Griffin in Support of Mot. for Prelim. Approval of Settlement (Apr. 3, 2015) ¶¶ 10-12 ("Griffin Decl."). As discussed below, Plaintiffs' counsel have substantial experience litigating complex class actions and are well-versed in employment law and wage-and-hour claims under federal and state law. Griffin Decl.

¶¶ 4-7.  Additionally, Plaintiffs' counsel have conferred with Plaintiffs throughout the litigation and the negotiation process.  Acting as putative class representatives and aware of the strengths and weaknesses of their claims, Plaintiffs unanimously support the Settlement achieved.

Accordingly, the Settlement is entitled to the presumption of fairness, particularly in light of the other factors already discussed, and should be preliminary approved and notice ordered to the Settlement Classes.

## IV.  THE RULE 23 SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLMENT PURPOSES

In granting preliminary approval, the Court should also certify the Rule 23 Settlement Class for purposes of the Settlement under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.  For settlement purposes only, the parties agree and submit that the following Rule 23 Settlement Class should be certified:

> All individuals who worked more than forty (40) hours during the period October 3, 2012 to January 12, 2015 and were paid less than the minimum wage by means of a "tip credit" (that is, servers, bartenders, food runners, and expediters) at Carolina Ale House Restaurants located in South Carolina, North Carolina, Georgia, Tennessee, or Texas, in addition to any Opt-In Plaintiffs as of the execution date of the Settlement Agreement that were employed prior to this period.

Settlement Agreement ¶ 1(hh).

The proposed Rule 23 Settlement Class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, and at least one of the subsections of Rule 23(b), and Defendants do not oppose conditional certification for settlement purposes.  *See* 4 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.27 (4th ed. 2002) ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only.").  Conditional settlement approval, class certification,

17

and appointment of class counsel have practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring that all class members are notified of the terms of the proposed settlement, and setting the date and time of the final approval hearing. *See In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784, 791 (3d Cir. 1995).

Under Rule 23, a class action may be maintained if all of the requirements of Rule 23(a) are met, as well as one of the requirements of Rule 23(b). Rule 23(a) requires that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the court to find (1) that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and (2) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). Federal Rule of Civil Procedure 23 should be liberally construed and flexibly applied to promote judicial efficiency and best serve the ends of justice. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003).

### A.      Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Fourth Circuit precedent "has recognized class certification in classes with as few as eighteen members and that a class of as few as twenty-five to thirty members raises a presumption that joinder would be impracticable." *Rodger v. Elec. Data Sys. Corp.*, 160 F.R.D. 532, 535-36 (E.D.N.C. 1995). Plaintiffs easily satisfy the

numerosity requirement – there are over 3,500 class members according to Defendants' records. Griffin Decl. ¶ 13.

**B.    Commonality**

The commonality requirement of Rule 23(a)(2) does not require that all, or even most, issues be common, but only that common issues exist.  *Central Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C. 1992), *aff'd*, 6 F.3d 177 (4th Cir. 1993); *Holsey v. Amour & Co.*, 743 F.2d 199, 216-17 (4th Cir. 1984).  "It is enough for a lawsuit to raise questions that are substantially related to the resolution of the case and that link the class members together, even though the individuals themselves are not identically situated."  *Ganesh, L.L.C. v. Computer Learning Ctrs, Inc.*, 183 F.R.D. 487, 489 (E.D. Va. 1998).  Thus, factual differences among the Class members' claims will not preclude certification if the claims share the same legal theory. *Brown v. Eckerd Drugs, Inc.*, 663 F.2d 1268, 1275 (4th Cir. 1981), *vacated on other grounds*, 457 U.S. 1128 (1982).

This case involves several common factual and legal issues, including whether Defendants breached the identical contractual terms of employment or were otherwise unjustly enriched by requiring Plaintiffs and other members of the Rule 23 Settlement Class to pay their overhead expenses by requiring a portion of their tips to be paid to other employees who did not receive tips.  These alleged claims of breach of express or implied contractual terms of employment – involving common operative facts stemming from corporate policies that affected class members in the same way – are sufficient to meet Rule 23(a)'s commonality factor.  *See Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 559 (E.D. Va. 2000) ("[C]ourts have consistently found a common nucleus of operative facts when the defendants are alleged to have directed standardized conduct toward the putative class members, or where the class claims arise out of standard documents.") (internal quotations omitted); *see also Reyes v. Autamarea Grp.,*

19

*LLC*, No. 10 Civ 6451 (RLE), 2011 WL 4599773, at *2 (S.D.N.Y. June 3, 2011) (finding commonality satisfied where restaurant workers raised tip misappropriation, spread of hours, and uniform claims).

## C.    Typicality

Typicality is also satisfied.   Under Rule 23(a)(3), a proposed class representative must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."   Fed. R. Civ. P. 23(a)(3).   The Supreme Court has noted that the "commonality and typicality requirements of Rule 23(a) tend to merge," *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982), and like Rule 23(b)(3)'s commonality requirement, Rule 23(a)(3) typicality does not require identical claims or defenses, *In re Southeast Hotel Props. Ltd. P'ship Investor Litig.*, 151 F.R.D. 597, 605 (W.D.N.C. 1993). Typicality exists if Plaintiffs' claims arise from the same course of conduct giving rise to the claims of the other class members and are based on the same legal theory.   *Simpson v. Specialty Retail Concepts*, 149 F.R.D. 94, 99 (M.D.N.C. 1993).   Here, Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of class members' claims, namely, that Defendants violated the same express and implied terms of Plaintiffs' employment, which terms they shared with other members of the class.   *See deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440(DAB), 2010 WL 2399345, at *2 (S.D.N.Y. Apr. 19, 2010) (holding that typicality is satisfied where plaintiffs and class members suffered same injury as a result of defendants' tip allocation and other wage and hour policies).   Additionally, the proposed class representatives include current and former Carolina Ale House Restaurant employees.   Plaintiffs McClaran, Roach, and Sharpe are current tipped employees, and Plaintiff Thomas is a former tipped employee of Carolina Ale House Restaurants.

### D.    Adequacy of the Named Plaintiffs

Rule 23(a)(4) requires Plaintiffs to demonstrate that they will fairly and adequately protect the interests of every putative claimant by showing that they have no interests that are antagonistic to other class members and that they are competent to undertake the case.  *Ganesh*, 183 F.R.D. at 490.  This Court has held that "[t]he adequacy of Plaintiff's counsel, like that of the individual Plaintiff, is presumed in the absence of specific proof to the contrary."  *South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 325, 330-31 (D.S.C. 1991) (citing *Falcon v. Gen. Tel. Co. of the Southwest*, 626 F.2d 369, 376 n.8 (5th Cir. 1980), *vacated on other grounds*, 450 U.S. 1036 (1981)).  Here, the Plaintiffs' interests are directly aligned with the interests of absent class members, thus satisfying the first prong of the test.  *See, e.g.,* Second Am. Compl. ¶¶ 14-15; Griffin Decl. ¶ 13.  Plaintiffs and each class member have been damaged by the same alleged conduct, and each has precisely the same interest in achieving the maximum possible recovery.  *Id.*  Furthermore, Plaintiffs McClaran, Thomas, Roach, and Sharpe have indicated that they will protect the interests of the class and rigorously prosecute this action on behalf of the class, and they have retained counsel that have extensive experience in complex class action proceedings and a reputation for tenaciously prosecuting such actions.  .  *Id.*  Thus, the two-fold standard of Rule 23(a)(4) is satisfied.

### E.    Certification is Proper Under Rule 23(b)(3)

Plaintiffs seek certification under Rule 23(b)(3).  Therefore, in addition to satisfying the foregoing requirements, Plaintiffs must also show "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Generally, common questions of law or fact are held to predominate if they represent a significant aspect of the case and can be resolved for all class

members in a single adjudication.  *See Haywood v. Barnes*, 109 F.R.D. 568, 581 (E.D.N.C. 1986); 7AA CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1778, at 121 (3d ed. 2005).  The common questions need not be dispositive of the entire litigation – this subsection requires only that the common questions of law and fact outweigh the individual questions.  *Chisolm v. TranSouth Fin. Corp.*, 184 F.R.D. 556, 565 (E.D. Va. 1999).  The other relevant consideration is whether a class action is superior to other ways of reaching a fair and efficient resolution of the controversy.  *Ganesh*, 183 F.R.D. at 491.  "The goal is to ensure that class certification occurs only when economy and efficiency are reasonably likely to result, and in a way that fairly weighs the competing interests of the parties."  *Id.*  These two factors are satisfied in this case.

### 1.    Common Questions of Law and Fact Predominate

The common questions previously discussed overwhelmingly predominate over any differing circumstances of individual claims because the central issues involve breach of identical express and implied terms of employment.  Because of Defendant's common course of conduct as to the class members, Plaintiffs will establish Defendant's liability for all class members to the extent they can prove it for their individual claims.  Where "common questions predominate over individual questions as to liability, courts generally find the predominance standard of Rule 23(b)(3) to be satisfied."  *Gunnells*, 348 F.3d at 428 (internal quotations omitted); *see also Southeast Hotel Props.*, 151 F.R.D. at 603-05.  Accordingly, this case easily satisfies the Rule 23(b)(3) predominance test.

### 2.    A Class Action Is a Superior Mechanism

Rule 23(b)(3)'s second part analyzes whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In determining whether "superiority" under Rule 23(b)(3) is satisfied, pertinent factors include the

following: (a) the interest of members of the class in individually controlling separate actions, (b) the extent and nature of any related litigation already commenced by class members; and (c) the desirability of concentrating the litigation of the claims in the particular forum.[4] *Id*.

Each of these factors supports class certification in this case. Individual actions would be prohibitively expensive in the most cases, and relying solely on the collective action mechanism for both the FLSA claims and the state-law claims asserted would leave the vast majority without a remedy for either. Indeed, the Supreme Court has recognized that "[c]lass actions also may permit the [Plaintiffs] to pool claims which would be uneconomical to litigate individually ... [because] most of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *see also Mills v. Roanoke Indus. Loan & Thrift*, 70 F.R.D. 448, 455 (W.D. Va. 1975).

Even if possible to litigate as individual actions, the resulting burden on the courts would be substantial, particularly whereas here, the relevant restaurants are located in multiple states. Accordingly, concentrating the litigation of the claims in this forum is desirable for both the members of the Rule 23 Settlement Class and the federal courts that could be burdened with hearing individual matters. Moreover, to the best of the parties' knowledge, no members of the Rule 23 Settlement Class have commenced related litigation in this or any other forum. Accordingly, the certification of the Rule 23 Settlement Class is a superior means for fairly and efficiently adjudicating the controversy under Rule 23(b)(3).

---

[4] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 (noting that "[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial") (internal citation omitted); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 183 (W.D.N.Y. 2005) ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.").

## V.    THE FLSA SECTION 216(b) COLLECTIVE ACTION SETTLMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

As set forth above, this lawsuit involves a *bona fide* dispute as to the FLSA claims asserted, which may be prosecuted as an opt-in collective action under Section 216(b) of the FLSA.  With Defendants' consent for settlement purposes only, Plaintiffs respectfully request that the Court conditionally certify the FLSA Section 216(b) Collective Action Settlement Class with the same class definition as the Rule 23 Settlement Class:

> All individuals who worked more than forty (40) hours during the period October 3, 2012 to January 12, 2015 and were paid less than the minimum wage by means of a "tip credit" (that is, servers, bartenders, food runners, and expediters) at Carolina Ale House Restaurants as defined in the Settlement Agreement located in South Carolina, North Carolina, Georgia, Tennessee, or Texas, in addition to any Opt-In Plaintiffs as of the execution date of the Settlement Agreement that were employed prior to this period.

Settlement Agreement ¶ 1(t).

Plaintiffs submit that certification of collective action settlement class under the FLSA is appropriate because Plaintiffs are similarly situated to the individuals on whose behalf they purport to bring this action.  *See Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007).  Similar to the commonality and predominance factors of Rules 23(a) and 23(b)(3), courts have considered three factors in reaching a final determination as to class certification under Section 216(b): "'(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.'"  *Id.* (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 996 F. Supp. 1071, 1081 (D. Kan. 1998)).

For the same reasons already discussed as to the predominance of common questions of fact and law for Rule 23 certification, a final determination of class certification under Section 216(b) of the FLSA is appropriate.  *See id.*  As noted above, Plaintiffs McClaran, Roach, and

Sharpe currently work as tipped employees at Carolina Ale House Restaurants, and Plaintiff Thomas used to work as a tipped employee for Defendants. All have been subject to the identical policy of having to pay a portion of their tips to the expediter working their same shift calculated as a percentage of gross sales during that shift. As alleged in the original complaint and maintained by Plaintiffs thereafter, the expediters at the Carolina Ale House Restaurants did not have ordinary and regular customer interaction and, therefore, did not customarily and regularly receive tips. Accordingly, their participation in the tip pool invalidated it and the tip credit Defendants claimed under the FLSA with respect to the wages paid to each of the Plaintiffs and all other tipped employees at Carolina Ale House Restaurants that are similarly situated to Plaintiffs with respect to these claims because of Defendants' application of uniform policies. Accordingly, certification of the FLSA Section 216(b) Collective Action Settlement Class is appropriate.

In a case presenting a *bona fide* dispute under the FLSA, the parties may submit a proposed settlement for review and approval by the court and entry of a stipulated judgment along with a Rule 23 class action settlement of state-law claims. *See Ervin v. OS Restaurant Serv., Inc.*, 632 F.3d 971 (7th Cir. 2011) (allowing "combined" Rule 23 and FLSA collective actions); *Lynn's Food Stores, Inc. v. U.S. By and Through U.S. Dept. of Lab., Empl. Standards Admin., Wage and Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982) (allowing a hybrid Rule 23 and FLSA collective action settlement); *see also Butler v. DirectSat USA, LLC*, 800 F. Supp. 2d 662, 676 (D. Md. 2011) (concluding, over defendants' objections, that "Plaintiffs' collective and class actions claims are not incompatible"). Therefore, the Court should certify the FLSA Section 216(b) Collective Action Settlement Class as well as the Rule 23 Settlement Class for purposes of the Settlement pursuant to the Settlement Agreement between the parties.

## VI.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Plaintiffs respectfully request that the Court appoint Lewis, Babcock & Griffin, L.L.P. ("LBG") and Law Office of Todd Ellis, P.A. ("Ellis") as Class Counsel.  Rule 23(g) governs the appointment of class counsel for certified Rule 23(b)(3) class actions as well as collective actions under Section 216(b) of the FLSA.  *See* Fed. R. Civ. P. 23(g)(1) (providing that "[u]nless a statute provides otherwise, which the FLSA does not, "a court that certifies a class must appoint class counsel").  Rule 23(g)(1)(A) sets forth four criteria courts must consider in evaluating the adequacy of proposed counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).  Plaintiffs' counsel meet all relevant criteria.   They did substantial work identifying, investigating, prosecuting, and settling the claims; have substantial experience prosecuting and settling complex class actions; are well-versed in employment and wage-and-hour law; and are well-qualified to represent the interests of the class.  Griffin Decl. ¶¶ 4-7.

## VII.    THE PROPOSED NOTICE TO THE SETTLEMENT CLASSES SHOULD BE APPROVED

Pursuant to Rule 23(c)(2)(B), the notice to the Settlement Classes must be the "best notice that is practical under the circumstances" and must "concisely and clearly state in plain, easily understood language" the following: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ.

P. 23(c)(2)(B).    Additionally, Rule 23(e)(1) governs notice of settlement.    Fed. R. Civ. P. 23(e)(1).  While Rule 23(e)(1) does not spell out the required contents of the settlement notice, it must "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'" *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-CV-00400BR, 2009 WL 2208131, at *28 (E.D.N.C. July 22, 2009) (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir.1975)).

As outlined in the proposed Preliminary Approval Order, Plaintiffs' Counsel will notify Settlement Class members of the pendency of the Action and the proposed Settlement by causing the Notice to be mailed to all members of the Settlement Classes who can be identified with reasonable effort within 21 days of the Court's entry of an order preliminary approving the Settlement.  Thereafter, claims administrator will take all reasonable steps to obtain the correct address of any Settlement Class members for whom notices are returned as undeliverable. Within 21 days of the preliminary approval order if not before, the claims administrator will post the Notice and Claim Form and other documents related to the settlement on a website that the Claims Administrator or Plaintiffs' Counsel will maintain and update with additional relevant filings.  The Notice will advise Settlement Class Members of (i) the pendency of the Action as a class action; (ii) the essential terms of the Settlement; (iii) the proposed Plan of Allocation; and (iv) information regarding Plaintiffs' Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses.  The Notice will also provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures, as well as deadlines, for opting out of the Settlement Classes, for objecting to the Settlement, the proposed Plan of Allocation and/or the motion for attorneys' fees and reimbursement of litigation expenses, and for submitting a Claim

Form. Plaintiffs' Counsel will also cause a copy of the Notice and Claim Form to be available on the settlement website.

The form and manner of providing notice to the Settlement Classes satisfy the requirements of due process and Rule 23, and the Notice and Summary Notice "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'" *Beaulieu*, 2009 WL 2208131, at *28 (quoting *Grunin*, 513 F.2d at 122. Accordingly, Plaintiffs respectfully request that the Court approve the proposed form and manner of notice.

## VIII.  PROPOSED SCHEDULE

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing and publication of the Summary Notice, and deadlines for submitting claims or for objecting to the Settlement.[5]  The Parties respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

| Event | Time for Compliance |
|---|---|
| Deadline for mailing the Summary Notice to the members of the Settlement Classes and posting the Notice and Claim Form on the website for the Settlement maintained by the Claims Administrator | 28 calendar days after entry of the Preliminary Approval Order |
| Deadline for mailing the Promotional Card and reminder of deadlines to members of the Settlement Classes | 63 calendar days after entry of the Preliminary Approval Order |
| Filing of papers in support of final approval of the Settlement, the Plan of Allocation, and Plaintiffs' Counsel's fee and expense request | 35 calendar days before the Settlement Hearing |

[5] The blanks for certain deadlines currently contained in the agreed-upon form of Notice will be filled in once the Court sets those dates and prior to mailing to Settlement Class Members.

| Receipt deadline for objections and requests for exclusion from the Settlement Classes | 21 calendar days before the Settlement Hearing |
|---|---|
| Filing of reply papers in support of final approval of the Settlement and Plaintiffs' Counsel's fee and expense request | 7 calendar days before the Settlement Hearing |
| Settlement Fairness Hearing | The week of July 13, 2015 or at the Court's earliest convenience thereafter |
| Deadline for submitting Claim Forms | 120 calendar days after the Notice Date |

## IX.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement; certify the Settlement Classes and appoint Plaintiffs as class representatives and Plaintiffs' Counsel as class counsel, for purposes of the Settlement; approve the form and manner of providing notice of the Settlement to the Settlement Classes; and enter the accompanying proposed Preliminary Approval Order.

Respectfully submitted,

s/ James M. Griffin
James M. Griffin (D.S.C. No. 1053)
LEWIS, BABCOCK & GRIFFIN, L.L.P.
1513 Hampton Street
Post Office Box 11208 (29211)
Columbia, South Carolina  29201
Telephone: (803) 771-8000
Facsimile: (803) 733-3534
jmg@lbglegal.com

Badge Humphries (D.S.C. No. 9550)
LEWIS, BABCOCK & GRIFFIN, L.L.P.
2113 Middle Street, Suite 305
Post Office Box 768
Sullivan's Island, South Carolina 29482
Telephone: (843) 883-7424
Facsimile:  (843) 883-7462
bh@lbglegal.com

29

Todd Ellis (D.S.C. No. 6488)
LAW OFFICE OF TODD ELLIS, P.A.
7911 Broad River Road, Suite 100
Irmo, South Carolina  29063
Telephone: (803) 732-0123
Facsimile: (803) 732-0124
todd@toddellislaw.com

*Attorneys for Plaintiffs*

Columbia, South Carolina
April 3, 2015

**WE CONSENT:**

Charles E. McDonald III (D.S.C. No. 6767)
OGLETREE, DEAKINS, NASH, SMOAK
 & STEWART, P.C.
Post Office Box 2757
Greenville, SC  29602
Telephone: (864) 271-1300
Facsimile: (864) 235-8806
chuck.mcdonald@ogletreedeakins.com

*Attorneys for Defendant Carolina Ale*
*House Operating Company, LLC and*
*Sullivan Management LLC*

Kevin S. Joyner (*Admitted Pro Hac Vice*)
OGLETREE, DEAKINS, NASH, SMOAK
 & STEWART, P.C.
4208 Six Forks Road, Suite 1100
Raleigh, North Carolina 27609
Telephone: (919) 787-9700
Facsimile: (919) 783-9412
kevin.joyner@ogletreedeakins.com

William L. Duda (D.S.C. No. 7740)
OGLETREE, DEAKINS, NASH, SMOAK
  & STEWART, P.C.
1320 Main Street, Suite 600
Columbia, SC 29201
Telephone: (803) 252-1300
Facsimile: (803) 254-6517
bill.duda@ogletreedeakins.com

*Attorneys for Defendant LM Restaurants, Inc.*